**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**JAMES H. KEARNS,**

      **Petitioner,**

**v.**                                     **Civil Action No. 1:09cv156
                                           (Judge Keeley)**

**ADRIAN HOKE, Warden,**

      **Respondent.**

## **OPINION/REPORT AND RECOMMENDATION**

### **I.   Procedural History**

On November 17, 2009, the *pro se* petitioner filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. The petitioner paid the required filing fee on December 10, 2009, and the Court subsequently directed the respondent to show cause why the petition should not be granted. On March 8, 2010, the respondent filed an Answer and a Motion to Dismiss Petition as Untimely and Procedurally Defaulted. Because the petitioner is proceeding without counsel, a Roseboro Notice issued the next day. On March 16, 2010, the petitioner filed his Response in Opposition to the respondent's motion. Accordingly, this case is before the undersigned for a Report and Recommendation pursuant to LR PL P 83.13, et seq.

### **II.   Petitioner's State Court Proceedings**

**A.   Conviction and Sentence**

In January 2000, a grand jury sitting in Harrison County, West Virginia, indicted the petitioner on one count of Murder, one count of Grand Larceny, one count of Burglary, one count of Brandishing, one count of Violation of a Domestic Violence Protective Order, one count of Trespassing and one count of Destruction of Property. Resp't Ex. 1. Prior to trial, however, all

counts of the indictment were dismissed except for the Murder and Grand Larceny counts. A jury trial was conducted on the two remaining counts, and on April 10, 2010, the petitioner was convicted of both counts. Resp't Ex. 2.

On May 30, 2000, the trial court issued an Amended Sentencing Order, granting the petitioner's motion for judgment of acquittal on the Grand Larceny conviction and sentencing the petitioner to life with mercy on the Murder conviction.[1] Resp't Ex. 3. The petitioner filed his appeal to the West Virginia Supreme Court of Appeals ("WVSCA") on December 4, 2000. Resp't Ex. 4. In his appeal, the petitioner alleged the following assignments of error:

(1) Whether error occurred by the trial court denying a motion for mistrial following an outburst by a family member of the victim during the opening statement of the prosecutor.

(2) Whether the Court erred in failing to suppress a statement made by the appellant to the arresting officer.

(3) Whether the Court erred in admitting a video tape of the defendant making a statement to the news media while dressed in jail garb and appearing disheveled.

*Id.* (Brief of Appellant at 4). The petitioner's appeal was refused on February 20, 2001. *Id.*

While his appeal was pending, the petitioner filed a Motion for New Trial based on newly discovered evidence. Resp't Ex. 5. That motion was heard by the sentencing court in March of 2002, and denied on May 29, 2002. Resp't Ex. 6. It is unclear whether the petitioner appealed this decision.[2]

---

[1]The Order also sentenced the petitioner in a separate case that is not at issue here. Resp't Ex. 3.

[2]The respondent notes that a subsequent post-conviction petition references that an appeal of this Order was filed and denied. Resp't Memorandum (dckt. 15) at 3 (citing Ex. 7 at ¶ 11(c)). However, the respondent was unable to obtain any record from the circuit clerk or the WVSCA

**B.    Petitioners' First State Habeas Petition**

On July 18, 2002, the petitioner filed a *pro se* state habeas petition.  Resp't Ex. 7.  Counsel was appointed counsel and an amended petition was later filed.  Resp't Ex. 9.  The amended petition raised four grounds for relief:

(1) Failure to suppress confession to Trooper Doyle;

(2) Failure to suppress confession to reporter;

(3) Failure to grant mistrial for outburst; and

(4) Bribery of witness.

*Id.*  After an evidentiary hearing, the petitioner's first state habeas petition was denied on May 23, 2005.  Resp't Ex. 10.  An appeal of that decision was refused on May 11, 2006.  Resp't Ex. 11.

**C.    Petitioners' Second State Habeas Petition**

The petitioner filed a second *pro se* state habeas petition on July 5, 2006.  Resp't Ex. 12.  In his second petition, the petitioner alleged that appointed counsel from his first state habeas petition was ineffective.  *Id.*  Counsel was appointed to represent the petitioner in pursuing this claim and an amended petition was later filed.  Resp't Ex. 13.  After an evidentiary hearing, the petitioner's second state habeas petition was denied on September 3, 2009.  Resp't Ex. 14.  Petitioners' appeal of that decision was refused on May 13, 2009.  Resp't Ex. 15.

### III.    Contentions of the Parties

**A.    The Petition**

Under ground one of the petition, the petitioner asserts a claim of ineffective assistance of trial counsel.  In support of this ground, the petitioner list 56 subgrounds.  However, not every

---

verifying that such an appeal was filed.  *Id.*

subground pertains to a claim of ineffective assistance of counsel. For example, in subground 2, the petitioner asserts that the Court erred in allowing photos of the victim into evidence over defense objections. This is clearly not a claim related to ineffective assistance of counsel, but one of trial error on the part of the court. Thus, the undersigned does not agree with the respondent who characterizes the petition as raising only one ground -- ineffective assistance of counsel. Instead, the Court finds that the petitioner raises a claim of ineffective assistance o f counsel, with various subgrounds, and several other additional grounds. The Court structures the petitioner's claims as follows:

(1) Ineffective Assistance of Counsel

(a) for failing to object to inflammatory and gruesome photos depicting the victim after she was killed (petitioners' subground 1);

(b) for failing to meet the deadline for filing motions after the change of venue was denied (petitioners' subground 3);

(c) for failing to motion the court for dismissal of the charges based on West Virginia's two term rule (petitioners' subground 4);

(d) for failing to raise the issue of petitioners' diminished capacity to commit First Degree Murder based on the evidence of his drug and alcohol use (petitioners' subground 6);

(e) for failing to view the video and listen to the audio tape of petitioners' alleged confession in preparing for trial (petitioners' subground 8);

(f) for failing to object to the state's assumption that the petitioner would be found guilty and informing the jury that mercy or no mercy would be applied on conviction (petitioners' subground 12);

(g) for failing to object to the illegal jury pooling practices (petitioners' subground 14);

(h) for failing to object to admissibility of statement of Christopher Kearns (petitioners' subground 15);

(i) for failing to give an opening statement to give the jury the defense's theory of the case (petitioners' subground 19);

(j) for failing to request cautionary instructions concerning expert testimony prior to Trooper Doyles' testimony concerning the petitioner's wife (petitioners' subground 20);

(k) for failing to object to the State's leading line of questioning stating that the Officer mentioned seeing the Moses vehicle parked somewhere going to Kimberly Minnix's residence (petitioners' subground 21);

(l) for failing to present the psychiatric evaluation to the jury and request a jury instruction on an insanity defense (petitioners' subground 22);

(m) for failing to object to the showing of the portion of petitioners' confession which was obtained by Troopers Whitt and Kimble and failing to request an additional suppression of the evidence once it was learned the confession was given only after the Troopers coerced the petitioner off the record (petitioners' subground 25);

(n) when petitioner said that he is/was insane and should be in a nuthouse (petitioners' subground 26);

(o) for failing to get an independent test performed on the urine sample taken from petitioner to dispute the State's contention that the petitioner's test came back negative for drugs and alcohol, or alternately, to obtain an expert to explain to the jury how long the named drugs and alcohol would have remained in the petitioner's system (petitioners' subground 27);

(p) for failing to object to State admitting into evidence that petitioner had a gun and that a bullet had been fired from the same when the same was irrelevant, had been ruled inadmissible prior in time and was highly prejudicial (petitioners' subground 28);

(q) for failing to ask the court to suppress the evidence of the urine sample based on improper storage practices by Trooper Doyle (petitioners' subground 29);

(r) when Trooper Whitt said petitioner smelled of alcohol (petitioners' subground 30).

(s) Trooper Whitt explains how he used "interview techniques" to get the truth from petitioner about the Moses incident (petitioners' subground 31);

(t) Trooper Whitt says he is not permitted to record his interviews (petitioners' subground 32);

(u) for saying that he did not think petitioner used the words "he suppressed her breathing either" (petitioners' subground 34);

(v) for failing to request a limiting instruction be given prior to Jeff Osbourne's testimony as an expert witness (petitioners' subground 35);

(w) for failing to question the urine specialist on whether he could be sure the urine was the same allegedly taken from petitioner at the time of his arrest (petitioners' subground 36);

(x) for failing to object to irrelevant speculation evidence when Kimberly Kearns suggested that petitioner was in her house because she had smelled smoke (petitioners' subground 37);

(y) for failing to object to Kimberly Kearns illustrated testimony of detailed events which she alleged took place at her house after the death of Ms. Moses when the evidence had been deemed inadmissible prior to trial (petitioners' subground 38);

(z) for failing to object to the state's leading line of questioning concerning the Kimberly Kearns incident (petitioners' subground 39);

(aa) for failing to object to prejudicial and suggestive testimony that Kimberly Kearns was in constant fear of her husband James Kearns (petitioners' subground 40);

(bb) for failing to object to the State's hearsay evidence by Kimberly Kearns that

nobody in petitioners' family owned a gun (petitioners' subground 41);

(cc) for failing to object to Kimberly Kearns testimony that the handwriting on the letter was the petitioner's (petitioners' subground 42);

(dd) for failing to object to the State's leading question placing Trooper Doyle in with Trooper Stout at the service station (petitioners' subground 43);

(ee) for failing to point out the inconsistencies before the jury wherein the state interjected false evidence into the record that Troopers Stout and Doyle searched the Moses vehicle at the service station (petitioners' subground 44);

(ff) for failing to point out the inconsistencies in the testimony of Christ Kearns, where prior to that time, Christ had admitted that he and petitioner had been roommates, then denied same at trial (petitioners' subground 45);

(gg) for failing to make objection to Christ Kearns testimony regarding the voluntariness of petitioners' confession to him (petitioners' subground 46);

(hh) for failing to object to the latex gloves being introduced as evidence (petitioners' subground 47(b));

(ii) for encouraging petitioner to testify to events of the murder when the same had no beneficial purpose (petitioners' subground 48);

(jj) for failing to object to the State's repeated line of questioning concerning whether petitioner knew Ms. Moses was dead (petitioners' subground 50);

(kk) for allowing the state to convince the petitioner that he never said he wanted just to make Ms. Moses unconscious when he had made similar statements in his confession (petitioners' subground 51);

(ll) for allowing the state to read back comments from petitioners' confession to the jury in closing arguments which was for the sole purpose of inciting the jury (petitioners' subground 53);

(mm) for not asserting a diminished capacity defense given the extensive evidence of heavy drinking and drug use (petitioners' subground 54);

(nn) for failing to object to numerous evidence placed before the jury that indicated petitioner committed the crime when there was no legal basis for its introduction (petitioners' subground 55).

2. The trial court erred by

(a) allowing gruesome photos of the victim over defense objections when the State prejudiced counsel by introducing the photos too late in time preventing counsel from being properly prepared (petitioners' subground 2);

(b) allowing evidence of the media coverage of petitioners' trial where the confession of the petitioner before the media was overly prejudicial and no proper ground was laid to its admittance and the Court erred in not ordering a change of venue after learning that over half the jury had been exposed to the media coverage (petitioners' subground 5);

(c) allowing petitioners' statement into the State's case in chief when petitioner was not read his Miranda rights prior to leading police to the key and based on the fact that petitioner expressly stated that he did not want to talk about the Moses' incident,

but only that he would talk about the misdemeanors involving his ex-wife (petitioners' subground 7);

(d) finding that petitioner's media confession was voluntary when he was accompanied by Trooper Doyle who notified the press where they would be and petitioner was not cautioned by his attorney and where the same was overly prejudicial to petitioner and the State failed to lay a proper ground for its relevance (petitioners' subground 9);

(e) denying his request for a change of venue when certain jurors either were federal agents or had close relationships with police officials and the case was highly publicized in a close-knit community (petitioners' subground 10);

(f) allowing the jury to be questioned concerning sentencing issues when the same was highly prejudicial and unconstitutional where petitioner was granted a bifurcated trial in order to prevent the petit jury from hearing sentencing issues before the verdict (petitioners' subground 11);

(g) instructing the jury that they could not take notes (petitioners' subground 13);

(h) allowing the jury to view media video of petitioners' confession when petitioner had been in handcuffs and the prejudicial effect of the video outweighed any probative value to the State (petitioners' subground 16);

(i) prejudicing the petitioner before the jury by advising them that at least four other statements of petitioner had been ruled out and by telling the jury to take the same evidence as a whole after instructing the jury not to prior in time (petitioners' subground 17);

(j) allowing the State to introduce evidence that petitioner went to his wife's house after killing Ms. Moses (petitioners' subground 18);

(k) allowing the jury to determine whether petitioners' confession was voluntary or not when the same issue was for the judge and not the jury (petitioners' subground 23);

(l) ruling that petitioner's confession to Trooper Doyle was voluntary (petitioners' subground 24);

(m) ruling that it was a question for the jury whether Trooper Whitt had coerced petitioner into testifying (petitioners' subground 33);

(n) allowing the State to introduce evidence that there were latex gloves in the front seat of Dorthea Moses' case, while excluding possible exculpatory evidence indicating three different DNA types on the gloves (petitioners' subground 47(a)); and

(o) not giving a directed verdict on both the grand larceny and murder charge (petitioners' subground 52).

3. Based on the record in this case, it is reasonable to believe that the State may have tampered with the evidence surrounding the urine sample (petitioners' subground 49).

4. There is clear evidence in this case which supports the conclusion that trial counsel was ineffective and that the habeas court abused its discretion in failing to allow habeas counsel to withdraw upon the attorney's motion to withdraw so that a ground of ineffective assistance

of trial counsel could have been properly raised (petitioners' subground 56).

**B.   The Respondent's Answer and Motion**

In his Answer, the respondent denies generally that any violation of the petitioner's rights occurred.  In his motion, the respondent asserts that the petition is untimely and that the petitioner has not properly presented his claims to the State courts.  Moreover, the respondent contends that the petitioner may not now attempt to properly present his claims to the State courts because he is barred from doing so due to a procedural default.  Thus, the respondent seeks the dismissal of the petition as untimely and procedurally defaulted.

In support of his motion, the respondent first asserts that the petition is untimely. Specifically, he contends that the petitioner's conviction and sentence became final on May 21, 2001. The respondent believes that the petitioner's motion for a new trial tolled the statute of limitations until it was denied on May 29, 2002.  The respondent concedes that the one-year limitations period was also tolled during the pendency of the petitioner's first state habeas petition, or until May 11, 2006, when his appeal of that decision was refused by the WVSCA.  However, the respondent argues that the petitioner's second state habeas petition failed to further toll the one-year statute of limitations because the substance of the claims made therein did not challenge the legality of the conviction.  Rather, the respondent argues, the petitioner's second state habeas petition merely challenged the effectiveness of his first state habeas counsel and is akin to a petition in mandamus seeking to require the trial court to conduct another post-conviction proceeding due to the inadequacies of the first.  A writ of mandamus, asserts the respondent, has been found not to toll the limitations period.  Thus, the respondent asserts that the petitioner's federal habeas petition, filed on November 17, 2009, is untimely by more than two years.

Next, the respondent asserts that the only claim raised in the petitioner's federal habeas petition -- ineffective assistance of counsel -- was found to be procedurally barred by the state court on independent and adequate state grounds. Consequently, the respondent asserts that the petitioner's claim cannot be considered by this court on federal habeas review without a showing of cause and prejudice or actual innocence. Moreover, consistent with the claims raised in the petitioner's second state habeas petition, the respondent asserts that ineffective assistance of habeas counsel does not serve to establish cause and prejudice for the procedural default because there is no right to effective assistance of counsel in state habeas proceedings.

## C.   **The Petitioner's Response**

In his response, the petitioner opposes the respondent's argument that his second state habeas petition did not toll the one-year statute of limitations for filing his federal habeas petition. The petitioner concedes that pursuant to W.Va. Code § 53-4A-1, et seq., a person who is convicted of a crime is ordinarily entitled to only one post-conviction habeas corpus proceeding. However, the petitioner asserts that certain exceptions apply to the general rule and one such exception is a claim of ineffective assistance of counsel at the omnibus habeas corpus hearing. Because the petitioner's claim in his second state habeas petition was whether counsel in his first state habeas petition was effective, the petitioner asserts that, pursuant to § 53-4A-1, he was entitled to pursue that claim in a second state habeas petition. Moreover, the petitioner asserts that his second state habeas petition was otherwise properly filed and therefore serves to toll the one-year statute of limitations. Accordingly, the petitioner asserts that his federal habeas petition, filed only six months after the appeal of his second state habeas was refused, is timely.

Additionally, the petitioner asserts that any waiver he may have made with regard to his

ineffective assistance of trial counsel claims was not knowingly and intelligently made and therefore cannot serve to procedurally bar consideration of those claims on federal habeas review. Thus, the petitioner requests that the respondent's motion be denied. In the alternative, the petitioner requests that he be allowed to withdraw any procedurally defaulted claims so he may pursue those other claims which are not procedurally barred.

## IV.   Analysis

### A.   Timeliness of Petitioner's Federal Habeas Petition

In 1996, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus petition. 28 U.S.C. §2244(d). Section 2244 (d)(1) provides that the period of limitation will begin to run from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1);  Hill v. Braxton, 277 F.3d 701 (4th Cir.2002); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000).

Here, the petitioner's direct appeal was refused by the WVSCA on February 20, 2001. The petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Where

no petition for a writ of certiorari is filed in the United States Supreme Court, the one-year limitation period begins running when the time for doing so -- 90 days -- has elapsed. Harris v. Hutchinson, 209 F.3d at 328. Accordingly, the petitioner's conviction and sentence became final on May 21, 2001, and he had until May 21, 2002, to timely file a federal habeas petition.

During the pendency of his direct appeal, the petitioner filed a motion for new trial. That motion was heard in March of 2002 and was denied on May 29, 2002. Thus, as noted by the respondent, this case presents the issue of whether such a motion constitutes an application for State post-conviction or other collateral review within the meaning of Section 2244(d)(2), so as to toll the one-year limitations period. As also noted by the respondent, there is very little authority on this issue. However, in Walker v. Williams, 2008 WL 4889661 (S.D.Ga. 2008), the Southern District of Georgia held:

> Although the Eleventh Circuit has not determined that extraordinary motions for a new trial toll the statute of limitations period, the plain language of § 2244 suggests that an extraordinary motion for a new trial would toll the statute of limitations period. As noted above, § 2244 states that '[t]he time during which a properly filed application for State post-conviction or *other collateral review with respect to the pertinent judgment or claim* is pending shall not be counted toward any period of limitation under this subsection.' 28 U.S.C. § 2244(d)(2) (emphasis added). Because Petitioner's extraordinary motion for a new trial relates to the pertinent judgment, it is a collateral motion that tolls the AEDPA statute of limitations.

In West Virginia, defendants are permitted to file an extraordinary motion for new trial based on newly discovered evidence. See State v. Davis, 217 W.Va. 93, 616 S.E.2d 89 (2004). Therefore, the petitioner was permitted to file his motion. Further, it does not make sense for the petitioner to proceed to a state or federal habeas petition while a motion for new trial is pending. If the motion were granted, the need for habeas relief would be obviated. Moreover, the undersigned agrees with the Southern District of Georgia, as apparently does the respondent, that an extraordinary motion for

new trial qualifies as a collateral motion which tolls the AEDPA statute of limitations. See Walkowiak v. Haines, 272 F.3d 234, 237 (4th Cir. 2001) ("[T]he term 'collateral review' refers to a proceeding separate and distinct from that in which the original judgment was rendered, and in which the petitioner challenges the legality of the original judgment.") Accordingly, the petitioner's motion for new trial tolled the one-year limitations period until May 29, 2002, the date it was denied.

The petitioner filed his first state habeas petition on July 18, 2002. At that time, 50 days of the one-year limitation had expired.[3] The petitioner's first state habeas petition remained pending until May 23, 2005, and his appeal was refused on May 11, 2006. Thus, the petitioner's one-year limitation began running again on May 12, 2006.

The petitioner filed his second state habeas petition on July 5, 2006. If the petitioner's second state habeas served to toll the one-year statute of limitations period, only another 55 days of the one-year limitations period expired. However, if the second state habeas petition did not serve to toll the one-year limitation period as the respondent argues, then the petitioner's federal habeas petition, filed on November 17, 2009, is grossly untimely.

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2); Harris v. Hutchinson, 209 F.3d at 327. As previously noted, "[t]he term 'collateral review' refers to a proceeding separate and distinct from that in which the original judgment was rendered, and in which the petitioner challenges the legality of the original judgment." Walkowiak v. Haines, *supra*. In addition, the

_____

[3]Because neither the Circuit Court nor the WVSCA could find any record of an appeal of the order denying the petitioner's motion for new trial, the undersigned has not tolled the one-year limitation period beyond the date on which the petitioner's motion for new trial was denied.

Supreme Court has explained that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000).

In West Virginia, post conviction habeas corpus proceedings are governed by W.Va. Code 53-4A-1, et seq., and the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia. See Markley v. Coleman, 215 W.Va. 729, 732, 601 S.E.2d 49 (2004). Additionally, the West Virginia post-conviction habeas corpus statute "clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding." Id. at 733 (quoting Syllabus Point 1, in part, Gibson v. Dale, 173 W.Va. 681, 319 S.E.2d 806 (1984)). Therefore, petitioners are "required to raise all known grounds at their first habeas corpus hearing," and any subsequent habeas corpus petition will be summarily dismissed unless it addresses one of a few narrow exceptions. Id. "These exceptions include: ineffective assistance of counsel at the omnibus habeas corpus hearing; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively." Losh v. McKenzie, 166 W.Va. 762, 768, 277 S.E.2d 606 (1981).

Here, the petitioner filed a second state habeas corpus petition alleging ineffective assistance of habeas counsel at his omnibus habeas corpus hearing. Resp't Ex. 13. As noted above, the petitioner is authorized to do so by the relevant West Virginia rules, statutes and caselaw. Thus, his second state habeas petition was a properly filed state habeas petition, and the respondent does not argue otherwise. The Fourth Circuit Court of Appeals has expressly noted that a properly filed

proceeding under W.Va. Code § 53-4A-1 entails collateral review for purposes of tolling the one-year state of limitations period. See Walkowiak v. Haines, 272 F.3d at 238. Thus, the petitioner's second state habeas petition tolled the one-year statute of limitations period in this case regardless of whether or not the claims raised therein presented a direct challenge to the petitioner's actual conviction and sentence.[4] As such, the petitioner's one-year limitation period was tolled from July 5, 2006, until May 13, 2009, the date his appeal was denied. Therefore, on the date this case was filed, 293 days[5] of the one-year limitation period had expired and the petition is timely filed.

## B.  Procedural Default

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citing Picard v. Conor, 404 U.S. 270, 276 (1971)). This means that "absent cause and prejudice or a fundamental miscarriage of justice . . . a federal habeas court may not review a claim when a state

---

[4]The undersigned does not agree with the respondent that the petitioner's second state habeas petition does not challenge his conviction and sentence or that the grounds raised therein are akin to a petition in mandamus. The State of West Virginia has clearly recognized that a petitioner may challenge the ineffectiveness of his state habeas corpus counsel, not pursuant to a petition in mandamus, but specifically in a state post-conviction habeas corpus proceeding. Additionally, had the petitioner been successful in his second state habeas proceeding, he would have then had the opportunity to again challenge his conviction and sentence. Thus, the claim is a challenge to the conviction and sentence, albeit in an indirect manner.

[5]The petitioner's appeal was denied on May 13, 2009. Therefore, his one-year limitations period began to run again on May 14, 2009. The petitioner's federal habeas petition was filed 188 days later, or on November 17, 2009. The petitioner's one-year limitations period had previously run for 50 days and 55 days, respectively. Thus, at the time this case was filed, only 293 days (50 + 55 + 188) of the one-year limitations period had expired.

court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule." Fisher v. Angelone, 163 F.3d 835, 845 (4th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).

With regard to procedural default, the United States Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. at 749-750.

"The assessment of whether a particular state procedure is 'independent and adequate,' so as to bar consideration of the merits of a federal constitutional claim, is a question of federal, not state, law." Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003). " A state rule is 'adequate' if it is firmly established and regularly or consistently applied by the state court, and 'independent' if it does not 'depend[ ] on a federal constitutional ruling." Id. at 169 (internal citations omitted). To show cause for a procedural default, a petitioner must demonstrate that the "factual or legal basis for [the] claim was not reasonably available" at the time of the default. Fisher v. Angelone, 163 F.3d at 845.

Claims that are procedurally defaulted cannot be considered in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. Murray v. Carrier, 477 U.S. 478, 495-496 (1986). "Objective factors that may constitute 'cause' include: (1) 'interference by officials that makes compliance with the State's procedural rule impracticable'; (2) 'a showing that the factual or legal basis for a claim was not reasonably available to counsel'; (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel." Wright v. Angelone, 151 F.3d 151, 160 n. 5 (4th Cir. 1998)(citations omitted). To establish prejudice, the petitioner must demonstrate "not merely

that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." McCarver v. Lee, 221 F.3d 583, 592 (4th Cir. 2000), cert. denied, 531 U.S. 1089 (2001). To establish actual innocence, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 (1995).

1. Ineffective Assistance of Counsel

The respondent argues that the petitioner's claim of ineffective assistance of counsel is procedurally barred because the state court disposed of that claim on an independent and adequate state ground, specifically, that the petitioner expressly waived his right to pursue that claim during his first state habeas proceeding. Pursuant to W.Va. Code §53-4A-1(c), "a contention . . . and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention . . . and grounds before trial, at trial, on direct appeal . . . or in a proceeding . . . or prior petition . . . filed under the provisions of this article." This Court has previously found that W.Va. Code §53-4A-1(c) is an independent and adequate ground for finding claims procedurally defaulted and that this section has been regularly and consistently applied. See Howard v. Ballard, 5:08cv112 (N.D.W.Va. Jan. 15, 2010); see also Losh v. McKenzie, *supra*; Markley v. Coleman, *supra*. That case was affirmed on appeal. *Id.* Thus, the plaintiff's claim of ineffective assistance of counsel, and its numerous subgrounds, is procedurally defaulted and cannot be considered in this proceeding absent a showing of cause and prejudice or actual innocence.

As grounds for his default, the petitioner asserts that his default should be excused because state habeas counsel was ineffective for failing to raise this ground in his state habeas proceedings.

However, in denying the petitioner's second state habeas petition, the state court found, and the record supports, that petitioner's habeas counsel reviewed the record and raised only those grounds which he believed had a good faith basis. See Resp't Ex. 14 at 21; see also Resp't Ex. 12.

With regard to ineffective assistance of counsel claims, counsel's conduct is measured under the two part analyses outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. In reviewing the reasonableness of counsel's performance, "judicial scrutiny must be highly deferential." *Id.* at 689-90. In fact, reviewing courts must accord post-conviction counsel the "presumption that he decided which issues most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Second, if the Court finds that counsel's performance was unreasonable, the petitioner must then demonstrate that he was prejudiced. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.*

The Sixth Amendment does not require post-conviction attorneys to press every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). Neither is post-conviction counsel required to raise every colorable claim on appeal. *Id.* at 754. To the contrary, "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). Therefore, counsel has great latitude to decide what issues to press in post-conviction proceedings, Cole v. Branker, 2008 WL 5999766 *9 (4th Cir. 2008),

because "[a] brief that raises every colorable issue runs the risk of burying good arguments." <u>Jones</u> <u>v. Barnes</u>, 463 U.S. at 753. Additionally, when arguing that counsel failed to raise a specific claim in post-conviction proceedings, it is particularly difficult to overcome the presumption of effectiveness because the petitioner must show that the ignored claim was clearly stronger than those counsel did present. <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (citing <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)).

In this case, the state habeas court specifically asked the petitioner if he wanted to raise a claim of ineffective assistance of counsel. The Court asked:

> THE COURT: Ineffective assistance of counsel, do you think that applies and do you wish to raise that as a ground for relief?
>
> MR. KEARNS: No, sir.

Resp't Ex. 16 at 10. Thus, despite counsel's alleged failure to raise this issue, the petitioner was given ample opportunity to do so and chose not to.

In addition, the petitioner has not overcome the presumption that post-conviction counsel merely "winnowed" out the weaker arguments on appeal to focus on those that he felt were more likely to prevail. At the petitioner's omnibus evidentiary hearing, the following exchange occurred:

> THE COURT: Okay. Let me ask you, Mr. Fittro, after reviewing the underlying case, and your discussions with Mr. Kerns [sic], and everything you know about this case, are those the only issues that can be raised on this habeas corpus appeal or habeas corpus proceeding?
>
> MR. FITTRO: Yes, Your Honor, to the best of my ability, I've reviewed the record, and these are the only grounds that I felt were viably – could be viably raised in a habeas corpus petition.
>
> THE COURT: Do you agree with that, Mr. Kerns [sic]?

> MR. KERNS [sic]:    Yeah, I agree with that.

Resp't Ex. 14 at 4-5 (citing Omnibus Hearing Transcripts at page 20, lines 8-19).

Next, the petitioner notes that post-conviction counsel admittedly lacked self-confidence and made self-deprecating remarks about his abilities to represent the petitioner in his post-conviction proceedings. However, the fact that habeas counsel lacked confidence or made self-deprecating remarks, does not, in and of itself, establish that he acted ineffectively. Resp't Ex. 12.

Finally, the petitioner has failed to show that the "ignored" claim was *clearly stronger* than those raised. At best, the petitioner has shown that this claim could have been raised, not that it should have been raised, or that it was more meritorious than those presented. Moreover, the petitioner has failed to show that, but for counsel's failure to raise this issue in his state habeas proceedings, the result of that proceeding would have been different. Accordingly, the petitioner has failed to establish that counsel was ineffective in his first state post-conviction proceeding so as to show cause and actual prejudice for his procedural default of ground one.[6]

    2.    Trial Error

In his direct appeal and first state habeas petition, the petitioner raised the following claims of trial error:

    (1) failure to grant a mistrial following an outburst by a family member of the victim during the opening statement of the prosecutor;

    (2) failure to suppress a statement made by the appellant to the arresting officer (Trooper Doyle);

---

[6] Moreover, the undersigned notes that the petitioner does not allege that a miscarriage of justice will occur if the Court does not consider the merits of ground one. Nor has the petitioner established that he is actually innocent of the crimes.

(3) admitting a video tape of the defendant making a statement (confession to reporter) to the news media while dressed in jail garb and appearing disheveled;

Thus, these three trial errors are the only ones that the petitioner has properly raised and exhausted in state court and which are not barred by a procedural default. With regard to the petitioner's media confession, the petitioner challenges the trial court's admission of that confession in grounds 2(b), 2(d) and 2(h). With regard to the petitioner's confession to Trooper Doyle, he challenges the trial court's admission of that confession in ground 2(l). With regard to the failure to grant a mistrial for the outburst by a member of the victim's family, the petitioner does not make that claim in these proceedings. Thus, it appears the petitioner properly exhausted grounds 2(b), 2(d), 2(h) and 2(l) in state court, those grounds are not procedurally defaulted and he may proceed on those grounds.[7]

3. <u>State Tampered with Urine Sample Evidence/Habeas Court Abused Discretion by Failing to Allow Habeas Counsel to Withdraw</u>

Although the respondent has not considered these issues, it is clear from the record before this Court that the petitioner has not raised these issues in the courts of the State, and like his ineffective assistance of counsel claim, has waived those issues because he failed to present them on direct appeal or in his first state habeas petition. As noted above, the petitioner cannot establish cause and prejudice for his default or that a miscarriage of justice will occur if these claims are not considered on federal habeas review. Therefore, these claims are also procedurally defaulted.

---

[7]Like the petitioner's ineffective assistance of counsel claim, grounds 2(a), 2(c), 2(e) - 2(g), 2(i) - 2(k) and 2(m)-2(o) were waived when the petitioner failed to present those claims on direct appeal or in his first state habeas petition. Thus, those grounds are procedurally defaulted, and as noted previously, the petitioner has failed to show cause and prejudice for his default, that a miscarriage of justice will occur if those grounds are not considered on federal habeas review or that he is actually innocent.

# V.   Recommendation

For the reasons stated, the undersigned recommends that the respondent's Motion to Dismiss (dckt. 14) be **GRANTED in part** and **DENIED in part**.  Specifically, the undersigned finds that the petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 (dckt. 1) is timely filed and the respondent's motion to dismiss as untimely should be denied.  Moreover, the undersigned finds that the petitioner has procedurally defaulted his claim of ineffective assistance of counsel, most of his claims of trial error (Grounds 2(a), 2(c), 2(e) - 2(g), 2(i) - 2(k) and 2(m)-2(o)), his claim that the state tampered with the urine sample and his claim that the habeas court abused its discretion by failing to allow habeas counsel to withdraw.  Thus, the respondent's motion to dismiss those claims as procedurally defaulted should be granted.  As to the petitioner's remaining claims of trial error, (Grounds 2(b), 2(d), 2(h) and 2(l)), the undersigned finds that those claims are exhausted and that no procedural bar prevents the Court from considering those claims on federal habeas review.  Consequently, the undersigned recommends that the respondent's motion to dismiss as procedurally defaulted should be denied as to Grounds 2(b), 2(d), 2(h) and 2(l), and the respondent  be made to file a response on the merits of those claims.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court, written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any  objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: April 20, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE