IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES H. KEARNS,

      Petitioner,

v.                                       Civil Action No. 1:09cv156
                                         (Judge Keeley)

ADRIAN HOKE, Warden,

      Respondent.

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. 45) AND
GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (DKT. 27)

## I. PROCEDURAL HISTORY

Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge John S. Kaull ("Magistrate Judge Kaull") issued on May 3, 2011, recommending that the petition pursuant to 28 U.S.C. § 2254 of the pro se petitioner, James H. Kearns ("Kearns"), be dismissed. Kearns filed timely objections to the R&R on May 16, 2011. For the reasons that follow, the Court **ADOPTS** Magistrate Judge Kaull's R&R in its entirety and **GRANTS** the pending Motion for Summary Judgment of the Respondent, Warden Adrian Hoke ("Hoke").

This case arises out Kearns's 2000 conviction in the Circuit Court of Harrison County, West Virginia, as a result of which he is currently serving a sentence of life with mercy for murdering Dorothea Moses ("Moses"). After Kearns filed the instant petition on November 17, 2009, Magistrate Judge Kaull issued his initial R&R

**KEARNS v. HOKE**                                                **1:09cv156**

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

(dkt. 19, "first R&R") recommending that Hoke's motion to dismiss be granted-in-part and denied-in-part. On August 5, 2010, the Court adopted the first R&R over Kearns's objection, finding the petition was timely but that only four of its specific grounds for relief were not procedurally defaulted. The Court dismissed all the other grounds for relief alleged in the petition and referred the case again to Magistrate Judge Kaull for further proceedings.

On May 3, 2011, Magistrate Judge Kaull issued the instant R&R ("second R&R"), recommending that Hoke's Motion for Summary Judgment be granted and the remaining grounds for relief in Kearns's petition be denied with prejudice.  The four grounds addressed by Magistrate Judge Kaull in the second R&R included:

- That the Court erred in allowing evidence of media coverage of the petitioner's trial, where the confession of the petitioner before the media was overly prejudicial, and no proper ground was laid prior to its admittance, and the Court erred in not ordering a change of venue after learning that half the jury had been exposed to the media coverage [Restructured ground 2(b)];

- That the Court erred in finding the petitioner's media coverage confession voluntary when he was accompanied by Trooper Doyle who notified the press where they would be, and Petitioner was not cautioned by his attorney, and where the same was overly prejudicial to petitioner, and the State failed to lay a

2

KEARNS v. HOKE                                          1:09cv156

ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
────────────────────────────────────────────────────────────

proper     ground     for     its     relevance
[Restructured ground 2(d)];

• That the Court erred in allowing the jury
to view media video of Petitioner's
confession, when Petitioner had been in
handcuffs, and the prejudicial affect of
the video outweighed any probative value
to the State [Restructured ground 2(h)];
and

• That the Court erred in ruling that
Petitioner's confession to Trooper Doyle
was voluntary, when Petitioner had
expressly stated that he did not want to
talk about the Moses incident [murder],
had signed his waiver form to talk to
Doyle concerning the incident about his
wife, and was later coerced and
threatened by Trooper Whitt and Trooper
Kimble, who failed to record their
interview with Petitioner which made the
confession of the Moses incident possible
[Restructured ground 2(l)].

(Petition, dkt. 1).

## II. STATE COURT PROCEEDINGS

On April 7, 2000, a jury in Harrison County convicted Kearns
of murder and grand larceny. The Circuit Court entered an Amended
Sentencing Order on May 30, 2000, that acquitted Kearns of his
grand larceny conviction and sentenced him to life with mercy on
the murder conviction. Kearns appealed his conviction to the West
Virginia Supreme Court of Appeals on December 4, 2000, which
refused to hear his appeal on February 20, 2001. While his appeal

KEARNS V. HOKE                                              1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

was pending, Kearns filed a motion for a new trial with the circuit court, alleging the existence of newly discovered evidence.  The circuit court denied that motion on May 29, 2002.

Kearns then filed his first petition for state habeas relief on July 18, 2002, alleging four claims of trial error. The circuit court denied this petition on May 23, 2005, and the West Virginia Supreme Court of Appeals refused Kearns's appeal of this denial on May 11, 2006. Kearns then filed a second petition seeking state habeas relief on July 5, 2006, alleging ineffective assistance of counsel in his first habeas proceeding. The circuit court denied this petition on September 3, 2008, and the West Virginia Supreme Court of Appeals refused Kearns's appeal of this denial on May 13, 2009.

### III. REVIEW OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Magistrate Judge Kaull's first R&R concluded that four of the grounds for relief alleged in Kearns's habeas petition were not procedurally defaulted and could be considered by this Court. He then restructured those grounds as claims of trial error and divided them into two sub-groups. The first sub-group related to challenges to the evidence admitted at trial, while the second sub-group related to Kearns's challenge to the voluntariness of his two confessions that were admitted at trial. In the second R&R,

KEARNS V. HOKE                                             1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Magistrate Judge Kaull concluded that none of the restructured grounds of Kearns's habeas petition was cognizable on federal habeas review.

### A.   Evidentiary Grounds

Claims based on state law and procedure that do not infringe upon federal constitutional rights are not cognizable under §2254. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). An evidentiary decision can rise to the level of a constitutional violation, however, if the petitioner can show that the ruling "offends . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Patterson v. New York, 432 U.S. 197, 202 (1977).

### 1.   Denial of Motion for a Change of Venue(Restructured Ground 2(b)).

In the R&R, Magistrate Judge Kaull concluded that the trial court applied the appropriate standard when it denied Kearns's motion for a change of venue based on media coverage. Because members of the jury with previous knowledge of the case stated they had not formed opinions or reached conclusions about Kearns's guilt or innocence, Magistrate Judge Kaull concluded that the denial of Kearns's motion for a change of venue did not affect the

KEARNS V. HOKE                                                    1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

fundamental fairness of the trial, and thus was not a valid ground for federal habeas review.

**2.    Orange Jumpsuit and Shackles (Restructured Ground 2(h)).**

Magistrate Judge Kaull concluded that the admission at trial of a video tape of Kearns confessing to a reporter while wearing an orange prison jumpsuit and shackled did not violate any fundamental right of Kearns. He reasoned that, because the trial court had cautioned the jury before it viewed the tape, no constitutional error occurred. Magistrate Judge Kaull further found that established federal constitutional law did not bar the introduction of this evidence, and thus the state court's decision to admit the tape was not contrary to clearly established federal law.

**B.    Voluntariness of Petitioner's Confessions**

**1.    Petitioner's Confession to the Reporter, Restructured Ground 2(d).**

Magistrate Judge Kaull rejected Kearns's objection to the trial court's admission of his confession to Desiree Anderson ("Anderson"), a television reporter. He concluded that the trial court's admission of Kearns's confession to Anderson was not contrary to clearly established federal law. He found that the state court's adjudication of Kearns's objection did not involve an unreasonable application of clearly established federal law, nor

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

was its decision based on an unreasonable determination of the facts, given the evidence presented. Because Anderson acted purely in a private capacity without coercion from the government, the magistrate judge concluded no fundamental error had occurred.

The constraints of the Fifth Amendment do not apply to purely private activity. United States v. Garlock, 19 F.3d 441, 442-43 (8th Cir. 1994). There are instances, however, when the government exercises control over a private actor to such a degree that private activity becomes attributable to the government for Fifth Amendment purposes. Id. The defendant, however, must establish that the private actor acted as an instrument or agent of the government by showing that "the government exercised such coercive power or such significant encouragement that it is responsible for [the private actor's] conduct, or that the exercised powers are the 'exclusive prerogative of the government.'" Id.

### 2.   Petitioner's Confession to Trooper Doyle, Restructured Ground 2(1).

Magistrate Judge Kaull rejected Kearns's objections to the trial court's finding that his confession to a West Virginia state trooper ("Doyle") was admissible. A defendant must be advised that he has the right to remain silent and to have an attorney present, otherwise known as a Miranda warning. Miranda v. Arizona, 384 U.S.

KEARNS V. HOKE                                                    1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

436, 479 (1966). Questioning by the police must cease if the defendant invokes his right to an attorney. The invocation, however, cannot be ambiguous. Edwards v. Arizona, 451 U.S. 477, 484 (1981). Moreover, if the defendant initiates a conversation with the police after invoking the right to counsel, the police may resume interrogation. Id. at 484-85.

In the R&R, Magistrate Judge Kaull concluded that the trial court's admission of Kearns's confession to Doyle was not contrary to clearly established federal law. He reasoned that, because Kearns had initiated the conversation with Doyle and continued to talk freely even after requesting a lawyer, Kearns's confession was voluntary. Furthermore, Kearns had signed a Miranda waiver as to the murder of Moses before actually admitting that he had killed her.

### IV. Kearns's Objections to the R&R

In his first objection to the R&R, Kearns argues the trial court erred by seating jurors with knowledge of his case. He reiterates that his request for a change of venue identified potential jurors who had prior knowledge of the facts in the case, and that this prior knowledge violated his constitutional rights.

Kearns's second objection argues that a trial judge cannot "un-ring a bell," and that the cautionary instruction it gave

8

KEARNS V. HOKE                                                    1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

before the jury saw the video tape of media coverage did not undo the damage he suffered when the jury viewed video tape showing him in an orange prison jumpsuit and shackled.

Kearns's third and fourth objections reference the trial court's admission of his confessions to Anderson and Doyle. From the case law he cites, the Court infers that Kearns contends those confessions involved misconduct on the part of the police and the reporter, and thus warrant reversal of his conviction.

### V. ANALYSIS

The Court reviews de novo any portions of Magistrate Judge Kaull's R&R to which Kearns has specifically objected. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). It may adopt without explanation, however, any of the magistrate judge's recommendations to which Kearns has not objected. Id. After conducting a de novo review of the R&R and Kearns's objections, for the reasons that follow, the Court **ADOPTS** Magistrate Judge Kaull's R&R in its entirety (dkt. 45) and **GRANTS** Hoke's motion for summary judgment (dkt. 27).

### A.   Video Tape Depicting Kearns in an Orange Jumpsuit and Shackles

Kearns contends that the trial court erred when it admitted a video tape depicting him in an orange prison jumpsuit and shackles.

9

KEARNS V. HOKE                                                  1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

He argues that the jury was prejudiced by that view and, as a consequence, he was not afforded a fair trial.

   1.   **This Claim Is Not Procedurally Defaulted**

   "A prisoner in state custody generally must exhaust state court remedies, and a federal habeas court may not review unexhausted claims that would be treated as procedurally barred by state courts – absent cause and prejudice or a fundamental miscarriage of justice." Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004) (internal  citation omitted); see 28 U.S.C. § 2254(b)(1)(A). In order to exhaust his available state court remedies, Kearns must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth, 377 F.3d at 448 (citation and internal quotation marks omitted). To satisfy this requirement, "the ground must be presented face-up and squarely." Id. (internal quotation marks omitted); see also Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 2001). In West Virginia, a petitioner successfully exhausts available state court remedies if he raises a claim on direct appeal or in a post-conviction state habeas corpus proceeding followed by an appeal to the West Virginia Supreme Court of Appeals. Barbe v. McBride, 740 F. Supp. 2d 759, 782 (N.D.W. Va.

KEARNS V. HOKE                                            1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

2010) (citing <u>Bayerle v. Godwin</u>, 825 F. Supp. 113, 114 (N.D.W. Va. 1993)).

In the third assignment of error in his direct appeal to the West Virginia Supreme Court of Appeals, Kearns laid out his claim that the video tape of his confession to Anderson should have been suppressed because it "showed [him] looking very disheveled and in jail clothing," and listed applicable West Virginia cases that offered alternatives to the admission of the video tape while still admitting the statement. Furthermore, he argued that this error impaired his federal constitutional rights. Thus, Kearns successfully exhausted his state court remedies regarding this claim because the West Virginia Supreme Court of Appeals received a proffer of the "operative facts" and "controlling legal principles" associated with the claim. <u>See</u> <u>Longworth</u>, 377 F.3d at 448.

### 2.   The Admission of the Video Tape Was Not Contrary to Clearly Established Federal Law

The Court may not grant Kearns's habeas petition unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the

11

KEARNS V. HOKE                                          1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

facts in light of the evidence presented in the [s]tate court proceedings." Id. at (d)(2); Knowles v. Mirzayance, 129 S. Ct. 1411, 1418-19 (2009). A trial court's evidentiary ruling is contrary to federal law where it "'applies a rule different from the governing law set forth in' the Supreme Court's holdings, or if it decides [the] case differently than the Supreme Court has on a 'set of materially indistinguishable facts.'" Lee v. Pallito, Civ. Action No. 2:09-cv-94, 2010 U.S. Dist. LEXIS 55896, *2 (D.Vt. Apr. 12, 2010)(quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2002)). Importantly, a federal court applying § 2254(d) is limited to reviewing those facts presented to the state court in the underlying proceeding. Cullen v. Pinholster, 131 S.Ct. 1388 (Apr. 4, 2011). Applying this standard, the Court concludes that the state court's adjudication of Kearns's objection was not contrary to clearly established federal law.

### a.   Cases Cited by the Petitioner

Kearns relies on a line of cases holding that visible shackling of a defendant at trial affects the presumption of innocence, and thus constitutes fundamental constitutional error. Specifically, he cites to Deck v. Missouri, 544 U.S. 622, 630-31 (2005); Illinois v. Allen, 397 U.S. 337, 344 (1970); and United States v. Jarvis, 792 F.2d 767 (9th Cir. 1986). To the extent that

12

KEARNS V. HOKE                                                    1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

these and similar cases even apply in this § 2254 proceeding, they are inapposite based on the facts presented here.

Because visible shackling during trial is presumptively prejudicial to a defendant, an essential state interest must be demonstrated to justify the practice, or, on review, the State must prove beyond a reasonable doubt that the shackling did not contribute to the verdict obtained. Deck, 544 U.S. at 634. In Deck, the defendant was brought into the courtroom in shackles during the penalty phase of a state capital murder trial, and subsequently sentenced to death. Id. at 625. The Supreme Court first discussed three policy reasons for not allowing the jury to view a defendant in prison garb during any part of the tial proceedings, including (1) the presumption that the defendant is innocent until proven guilty, (2) the constitutional right to counsel, and (3) the courts' duty to maintain a dignified judicial process. Id. at 630.

The Court then held that the presentation of the defendant in shackles during the penalty phase of a capital case  fundamentally affects the fairness of the jury's fact-finding proceedings as to sentencing just as severely as it would during the guilt phase of the trial. Id. at 630-32. It further held that the defendant did not need to demonstrate actual prejudice to establish the due process violation; rather, the state had the burden of proving

KEARNS V. HOKE                                              1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

beyond a reasonable doubt that the shackling did not affect the verdict. Id.

In Allen, the defendant had interrupted the trial proceedings to such an extent that he had to be removed from the courtroom during part of his trial. Allen, 397 U.S. at 337. The Supreme Court upheld his removal, reasoning that it would have been far worse to have tried the defendant while bound and gagged in front of the jury. Id. at 345. The Court noted that visible shackling during trial is forbidden unless it is "justified by an essential state interest" specific to the defendant on trial. Id. at 343-44.

Finally, in Jarvis, the jury witnessed the defendant's four co-defendants being brought up to the courtroom in an elevator, while dressed in prison clothing and shackled to each other. Jarvis, 792 F.2d at 768. The Ninth Circuit held that this view impaired the fairness of the defendant's trial because the jurors could "infer [the defendant's] guilt by association." Id.

It is worth noting that the Ninth Circuit's opinion in Jarvis does not constitute clearly established federal law for the purposes of a § 2254 proceeding. See Williams, 529 U.S. at 405-06. Furthermore, that circuit court's later opinion in Ghent v. Woodford, 279 F.3d 1121, 1132 (9th Cir. 2002), casts doubt upon the

14

KEARNS V. HOKE                                               1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

continuing validity of the holding in Jarvis. See discussion at V(a)(2)(b), infra.

### b.   Cases In Support of Allowing the View of Defendant in Prison Garb

Although not directly applicable on habeas review, several circuit court decisions addressing variations of the question whether to allow a jury to view the defendant in prison garb are instructive. These cases establish that there is no bright-line rule prohibiting the jury from viewing a defendant in jail clothing or restraints. In point of fact, many courts have held that a juror's brief view of a defendant in shackles does not qualify as a due process violation, and have affirmed that a curative instruction is often sufficient to address any issues of prejudice.

In Ghent, for example, jurors on more than one occasion viewed the defendant being transported to and from the courtroom in shackles. 279 F.3d at 1132. They glimpsed Ghent as he walked in a hallway and stood at the doorway of the courtroom to have his restraints removed. Id. The Ninth Circuit held that "[t]he jury's brief or inadvertent glimpse of a shackled defendant is not inherently or presumptively prejudicial, nor has Ghent made a sufficient showing of actual prejudice." Id. at 1133.

KEARNS V. HOKE                                           1:09cv156

ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Similarly, in United States v. Jones, 468 F.3d 704, 705 (10th Cir. 2006), jurors inadvertently observed the defendant in leg restraints before he entered the courtroom. The district judge offered to give the jury a curative instruction but defense counsel declined, not wishing to draw further attention to the incident. Id. The Tenth Circuit held that, because a curative instruction had been offered and the jury's view had been brief and inadvertent, no prejudicial error occurred. Id. at 709.

Finally, in Chavez v. Cockrell, 310 F.3d 805, 809 (5th Cir. 2002), the jurors viewed the defendant receiving an inadvertent shock from a hidden stun belt during the trial. The Fifth Circuit held that the defendant was not prejudiced by the jury's view because it was momentary and the trial judge had mitigated any prejudicial impact by clearing the courtroom immediately and holding two hearings to ascertain the prejudicial effect, if any, one with court security officers and one with the jurors. Id. Because the judge took mitigating steps by discussing the issue with the jurors and ensuring that they were still able to impartially decide the case, the defendant was not prejudiced by the stun belt incident. Id.

c.   Analysis Under Applicable Case Law

Although Kearns strongly argues that Deck should apply in his

16

**KEARNS V. HOKE**                                                    **1:09cv156**

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

case, he cannot obtain relief based on rules of constitutional law that were not announced by the Supreme Court at the time his conviction became final in May, 2002.[1] See <u>Chavez</u>, 310 F.3d at 809-810 (citing <u>Teague v. Lane</u>, 489 U.S. 288, 301 (1989)). Kearns may only overcome the <u>Teague</u> retroactivity bar by showing that a court considering his claim at the time his conviction became final in May, 2002, would have felt compelled to conclude that allowing the jury to view the video tape of him in his prison attire impaired his presumption of innocence. See <u>O'Dell v. Netherland</u>, 521 U.S. 151, 156 (1997).

Although <u>Deck</u>'s precise holding would not apply to this case, previous Supreme Court cases had announced the same general rule. Prior to <u>Deck</u>, for example, the Supreme Court had already held that shackling in the courtroom was "inherently prejudicial." <u>Holbrook v. Flynn</u>, 475 U.S. 560, 568 (1986). Thus, the holding in <u>Deck</u> merely extended preexisting federal case law to the penalty phase of a capital case. See <u>Deck</u>, 544 U.S. at 632-35. Prior cases had

---

[1] A state conviction becomes final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." <u>Teague</u>, 489 U.S. at 294-95 (citation omitted).

KEARNS V. HOKE                                          1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

long held that such a view could be problematic during the guilt phase of a trial because of the potential effect on the presumption of innocence. See, e.g., Riggins v. Nevada, 504 U.S. 127, 137 (1992); Estelle v. Williams, 425 U.S. 501, 503-505 (1976); Chapman v. California, 386 U.S. 18, 24 (1967).   Thus, the Court concludes that, in May, 2002, a court would have felt compelled to conclude that viewing by a jury of a shackled defendant in the courtroom during the guilt phase of a trial was per se prejudicial.

The Supreme Court, however, has never extended this prohibition to the situation that occurred in this case where jurors did not personally view Kearns in prison clothes and shackles in the courtroom. Rather, Kearns was viewed on a video tape made while he was being transported to court. The jury never viewed him in the courtroom in prison attire. This fact alone distinguishes the instant case from Deck and Allen, and makes it more analogous to Ghent and Jones, where the jury's view was not held to be inherently prejudicial.

In addition, the trial court judge carefully cautioned the jury that they were not to consider Kearns's appearance in such attire when assessing his guilt:

> Now, in this video that you will see here in a minute, the defendant Mr. Kearns is shown in jail clothing and some kind of restraints. The Court wants to

18

KEARNS V. HOKE                                                    1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

advise you that this is not unusual and the action is quite common for a person to be in jail clothing and restraints upon arrest and shortly thereafter be transported to an arraignment.

The Court will caution you, though, at this point, that you must not let this prejudice you in any way against Mr. Kearns. It must not be considered by you in any way on the issue of guilt. You are to make no inference about his guilt from the fact that he appears this way in jail clothing and restraints in this video. It is not to enter into your deliberations or your decision in this case. You must be very careful not to let this influence your decision in any way.

Although a person may be arrested or charged with a crime and placed in jail clothing and/or restraints, they are still presumed to be innocent until proven guilty beyond a reasonable doubt.

(Trial Transcript, dkt. 27-5 at 671-72.) Beyond its charge to the jury that the defendant's guilt must be proven beyond a reasonable doubt, and that he is presumed to be innocent of the charge in the indictment, the trial court discussed how the jury should view the video. In this Court's opinion, therefore, the facts of this case fall within the ambit of decisions upholding a conviction where a jury was properly cautioned by the trial court and given a curative instruction to mitigate a jury's view of the defendant in prison attire. Because Kearns was never present in the courtroom wearing prison clothes or shackled, and because the jury was properly cautioned by the trial court about how to weigh the video tape

19

KEARNS V. HOKE                                                1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

evidence in its deliberations, the admission of the video tape was not contrary to clearly established federal law.

**B.    Change of Venue**

Kearns contends that Magistrate Judge Kaull erred when he concluded that the trial judge properly denied Kearns's motion for a change of venue. He argues that these rulings by the state court were incorrect and he suffered prejudice as a result.

The right to an impartial jury under the Sixth Amendment, and the fundamental fairness requirement of the Due Process Clause in the Fifth and Fourteenth Amendments, govern the change of venue question raised by Kearns. See United States v. McVeigh, 918 F. Supp. 1467, 1469 (W.D.Okla. 1996). Those amendments provide the basis for the requirement in Fed. R. Crim. P. 21(a), and similar state court rules, of a change of venue if the defendant cannot obtain a fair and impartial jury in the trial court's jurisdiction.

Jurors, however, "are not expected to be 'totally ignorant of the facts and issues involved,' and even a juror's preconceived conclusion on guilt will not alone rebut the presumption of impartiality if the trial court is satisfied that the juror 'can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" Wallace v. Branker, 354 F. 3d. 807, 821 (4th Cir. 2009) (quoting Murphy v. Florida, 421 U.S. 794

20

KEARNS V. HOKE                                          1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

(1975)). Here, the trial court's denial of Kearns's motion for change of venue did not rise to the level of a constitutional violation.

The trial court's determination that Kearns could receive a fair trial in Harrison County, where the crime was committed, was reasonable. The court thoroughly considered Kearns's motion for a change of venue and interviewed each of the potential jurors during <u>voir</u> <u>dire</u>. It inquired whether they had knowledge of the crime, whether they had formed an opinion about Kearns's guilt or innocence, and whether they could be impartial and fair. Only three of the selected jurors specifically recalled seeing media reports of the crime, and each stated that he or she had not formed an opinion about Kearns's guilt or innocence and could be impartial and fair.

Additionally, the only potential juror who actually reported seeing media coverage of Kearns's confessions was not selected to serve. Thus, the denial of the motion for change of venue did not affect the fundamental fairness of Kearns's trial and is not cognizable on federal habeas review.

C.   <u>**Petitioner's Confession to the Reporter**</u>

Kearns challenges Magistrate Judge Kaull's conclusion that the trial court properly denied his motion for retrial on the basis of

KEARNS V. HOKE                                                    1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Kearns's confession to Anderson, the reporter. He contends that, aside from the jail garb and shackles issue, admitting the video of that confession violated his constitutional rights under Miranda. Hoke argues that admission of the confession was proper.

The protections of the Fifth Amendment usually would not apply to Anderson's purely private activity as a reporter. In order to establish that the admission of this confession was constitutionally improper, Kearns has to prove that Anderson was actually working under the influence or at the behest of the government. Garlock, 19 F.3d at 442-43. To do this he must establish that "the government exercised such coercive power or such significant encouragement that it is responsible for [Anderson's] conduct, or that [Anderson] exercised powers that are the 'exclusive prerogative of the government.'" Id. (quoting Fidelity Financial Corp. v. Federal Home Loan Bank, 792 F.2d 1432, 1435 (9th Cir. 1986)).

Here, the record establishes that Anderson asked Kearns questions on her own accord and at the direction of her news director, John Dahlia. She learned that Kearns would be doing a "perp walk," and, while she was on the scene, Kearns voluntarily blurted out his confession to her. There is absolutely no evidence that Anderson acted in concert with the police, or asked certain

22

**KEARNS V. HOKE**                                              **1:09cv156**

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

questions in order to elicit responses from Kearns to aid the police in prosecuting him. Anderson was acting solely in a private capacity and was not under the coercive power of the state; thus the trial court's admission of Kearns's confession to her was not contrary to established federal law.

**D.    Petitioner's Confession to Trooper Doyle**

Kearns objects that the trial court's admission of his confession to Doyle was not harmless error and requires a retrial. Under Miranda, a defendant must be advised that he has the right to remain silent and to have an attorney present. 384 U.S. at 479. Although questioning by the police must cease once the defendant invokes his right to an attorney, such invocation cannot be ambiguous. Maryland v. Shatzer, 130 S. Ct. 1213, 1219 (2010)(citing Edwards, 451 U.S. at 484). Furthermore, if the defendant initiates a conversation with the police after invoking the right to counsel, the police may resume interrogation. Edwards, 451 U.S. at 484-85.

The facts in this case do not support Kearns's claim that admission of his confession to Doyle by the trial court was erroneous. In point of fact, a careful review of the record establish that Kearns was arrested by Doyle on misdemeanor charges and signed a Miranda waiver as to these charges after initiating a conversation with Doyle on the way to the police station.

KEARNS V. HOKE                                        1:09cv156

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Eventually, the conversation turned to the death of Moses, and Doyle asked Kearns if he had been involved in the murder. Kearns replied that he would not discuss that matter without a lawyer. Doyle then stated that he would stop talking and provide Kearns access to counsel. Kearns assured Doyle that he would continue talking, but that he would not answer questions about the death of Moses.

Eventually, however, Kearns confessed to killing Moses, but only after he had been administered a polygraph examination by two other members of the West Virginia State Police. Importantly, prior to undergoing that polygraph examination, Kearns had signed another Miranda waiver that specifically stated he knew that he was going to be questioned about the Moses murder. Moreover, when Doyle asked him whether this confession was voluntary, Kearns affirmed that it was.

The trial court's admission of the confession, thus, was not contrary to established federal law. Kearns initiated the conversation with Doyle and continued to talk to him even after the trooper offered counsel and stated he would stop the questioning. Later, Kearns signed a Miranda waiver that specifically acknowledged he knew he would be questioned about the Moses murder. Finally, after confessing to Doyle, Kearns stated that his

24

**KEARNS V. HOKE**                                                                    **1:09cv156**

### ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

confession was voluntary. Thus, the admission of the confession at trial was not an unreasonable application of clearly established federal law.

### VI. CONCLUSION

For the reasons discussed, the Court **ADOPTS** Magistrate Judge Kaull's second R&R (dkt. 45) in its entirety, **GRANTS** Hoke's Motion for Summary Judgment (dkt. 27), and **DISMISSES** this case **WITH PREJUDICE.**

It is so **ORDERED.**

Because Kearns does not raise a debatable constitutional issue, the Court **DECLINES** to issue a certificate of appealability. Rule 11, Rules Governing §§ 2254 and 2255 Proceedings.

The Clerk is directed to transmit copies of this Order to counsel of record, all appropriate agencies, and to the pro se petitioner via certified mail, return receipt requested.

Dated: August 19, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE